*FOR PUBLICATION*

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

In re ) Case No. 16-90603-E-7
) Docket Control No. DB-3
MARK ONE CORPORATION, )
)
Debtor. )
_____ )

**MEMORANDUM OPINION AND DECISION**
**MOTION FOR SUPPLEMENTAL ORDER IDENTIFYING**
**ASSETS SOLD BY CHAPTER 7 TRUSTEE**

Burger Physical Therapy Services ("Burger PTS") requests this court issue a supplemental order to the court's earlier order approving the settlement agreement between Chapter 7 Trustee Irma Edmonds and John C. Sims, individually and as Trustee of the G&M Baker 1994 Trust regarding Trustee's Preference Claim against Sims. The request for such a supplemental order is provided for in this court's order remanding the *Burger Physical Therapy Services, Inc. v. Sims* adversary proceeding back to state court. 17-9021; Order, Dckt. 69.

An Involuntary Bankruptcy Petition was filed against Mark One Corporation ("Debtor") on July 8, 2016. Dckt. 1. There were two petitioning creditors commencing the involuntary bankruptcy case - Burger PTS and Wescom Solutions, Inc. *Id.* at 2-4. On August 5, 2016, a stipulation to the entry of the order for relief in this case was filed (Dckt. 6) and the order for relief was entered (Dckt. 8).

The present Motion was filed on May 7, 2020, proper notice provided pursuant to Local Bankruptcy Rule 9014-1(f)(1), Opposition and Responsive Pleadings filed, and final argument was presented to the court on August 6, 2020.

**HISTORY OF COURT GRANTING MOTION FOR
CHAPTER 7 TRUSTEE TO SELL ASSETS AND RIGHTS
OF THE BANKRUPTCY ESTATE TO JOHN SIMS**

On January 31, 2018, Irma Edmonds, the Chapter 7 Trustee ("Trustee"), requested that the court approve a compromise and settle competing claims and defenses with John Sims, individually and as trustee of the G&M Baker 1994 Trust ("Sims/Baker Trustee"), and the sale of said claims to Sims/Baker Trustee ("Motion to Approve Settlement and Sale").

After parties provided the court with supplemental pleadings addressing specific issues identified by the court, the Motion to Approve the Settlement and Sale was granted. The terms of the Settlement and sale were modified in the order granting that motion, which expressly states that Burger PTS's claims against Sims/Baker Trustee, if any, were not transferred by the Trustee, and therefore not included in the Settlement. Order, Dckt. 100.

In the Civil Minutes from the hearing on the Motion to Approve Settlement and Sale, the court addressed that further proceedings might be required in this court. The court further noted that:

> In remanding and abstaining, this court recognizes that it could exercise federal court jurisdiction for this determination. Out of further regard for the State Court judge to whom the matter is remanded, if that judge determines that such issues should properly be determined by a federal court judge, this court will exercise such jurisdiction if the State Court judge orders the parties to obtain such determination by supplemental motion for determination of the rights transferred by the Chapter 7 Trustee under the Settlement and what rights, if any, were not transferred (or such other proceeding as [Burger PTS] and [Sims/Baker Trustee] determine proper).

16-90603, Civil Minutes at p. 14, Dckt. 99.

Burger PTS comes now and makes the present Motion pursuant to the court's order on the Motion for Remand in the Adversary Proceeding. In that order the court provided that in the event the State Court judge requires this court to determine the rights and property of the parties involved, such determination may be sought by motion:

> If the State Court judge concludes that determination of this federal court of what rights and property were acquired by Defendants from the Chapter 7 Trustee is necessary, in that State Court judge's opinion, upon order of said State Court judge, [Burger PTS] and [Sims/Baker Trustee] may seek such determination by motion for supplemental order to the Order Approving the Settlement or such

other federal court proceeding as proper under the Federal Rules of Bankruptcy Procedure.

17-09021, Order, Dckt. 69.

## REVIEW OF MOTION FOR SUPPLEMENTAL ORDER AND OPPOSITION THERETO

The present Motion begins with a recitation of the prior Motion to Approve the Settlement and Sale between the Chapter 7 Trustee and Sims/Baker Trustee, and this court's Order granting that Motion. Burger PTS reviews this court's earlier order relating to Burger PTS's prior motion for a supplemental order, which was denied without prejudice. In denying the prior motion, the court ordered Burger PTS to focus a subsequent motion for supplemental order on the claims stated in its First Amended Complaint ("First Amended Complaint"), the now current complaint, in *Burger Physical Therapy Services, Inc. v. Sims*, California Superior Court, for the County of Stanislaus, Case No. 2027597 ("State Court Action"). Motion, p. 1:21-28, 2:1; Dckt. 181.

The grounds stated with particularity in the present Motion are:

1.  "Burger may pursue its state law claims against Sims because the claims are personal to Burger and were never owned by [Debtor's] bankruptcy estate." Motion, p. 2:2-4; Dckt. 181.

2.  "Thus, the claims were not sold to Sims as part of his settlement of the Trustee's preference action against Sims." *Id.*, p. 2:3-5.

3.  "Moreover, Burger's claims are particularized and not shared by any other creditors of [Debtor]." *Id.*, p. 2:5-6.

4.  "Sims took specific and direct actions to tortiously interfere with Burger's contractual relationship with [Debtor] and the economic advantage Burger had with [Debtor]." *Id.*, p. 2:6-7.

5.  "Under the relevant California and federal authorities, Burger thus has standing to pursue its state law claims against Sims in the Stanislaus County Superior Court." *Id.*, p. 2:7-9.

The present Motion then continues to state that it is based on the Motion, but also the following additional documents (and whatever grounds may be stated therein):

- The Notice,

- The Points and Authorities,

- The Request for Judicial Notice,

3

- • The Exhibit List (presumably the Exhibits themselves, and not merely the "list"),

- • All other unidentified pleadings, documents, and papers that are filed in this "action" (not a defined term), and

- • Whatever "other matters" presented to the court at the hearing.

*Id.*, p. 2:10-13.

Burger PTS has provided the court with a fourteen (14) page Points and Authorities. Dckt. 183. After the title page and tables, Burger PTS begins on page 4 of the "points and authorities" with a statement of various alleged facts and grounds upon which Burger PTS is basing the requested relief. These grounds continue being stated through the middle of page 7 of the "points and authorities." These statements of grounds comprise about one-third of the "points and authorities."

Beginning on the middle of page 7 of the Points and Authorities, Burger PTS cites the court to various cases and legal authorities, and provides legal argument and analysis.

The Request for Judicial Notice is three pages in length, listing one (1) document, Burger PTS's First Amended Complaint in the State Court Action. Dckt. 184. There is one (1) exhibit filed: Exhibit 1, Burger PTS's First Amended Complaint in the State Court Action, pages 4 thru 12. Dckt. 185.

**Opposition Filed by Sims/Baker Trustee**

On March 1, 2020, Sims/Baker Trustee filed a timely opposition. Sims/Baker Trustee begins his Opposition with several assertions, namely that:

(a) Burger PTS has admitted his claims are general and is barred from arguing otherwise;

(b) Burger PTS lacks standing because it cannot allege any cause of action that is particular to it;

(c) Burger PTS's cases are distinguishable; and

(d) leave to amend should be denied.

Dckt. 188.

The Opposition is ten pages of detailed argument and authorities. There are many California cases cited, and a discussion as to why this court should not be allowing Burger PTS to amend its

4

complaint. Given that there is no adversary proceeding before this court, it is not clear why Sims/Baker Trustee is arguing that amendment on a complaint should not be allowed by this court. There is nothing in the grounds and relief stated with particularity in the Motion about seeking an order from this court to amend the First Amended Complaint that is properly before the California Superior Court.

**Reply Filed by Burger PTS**

On May 28, 2020, Burger PTS filed a timely thirteen (13) page Reply addressing the Opposition. Dckt. 195.

**CONSIDERATION OF THE MOTION**

Burger PTS states with particularity in the Points and Authorities (Dckt. 181) the actual grounds upon which it asserts that the requested relief is proper. The court distills from the Points and Authorities the following grounds and treats them as being restated with particularity in the Motion (as required by Fed. R. Bankr. P. 9013) by Burger PTS.

Defendant John Sims is Trustee of the Baker G&M 1994 Trust ("Baker Trust"). Sims/Baker Trustee also served as President of Debtor, a corporation wholly owned by the Baker Trust. Sims/Baker Trustee sold Debtor's assets in a manner that ensured that Sims/Baker Trustee and his family members received the proceeds and for all amounts purportedly owed to the Baker Trust; instead of the proceeds being used to pay all of Debtor's creditors, including Burger PTS, who were owed money for services rendered. The purchaser of Debtor's assets, Vista Del Sol Postacute Care ("Vista"), participated in Sims/Baker Trustee's scheme by obtaining Debtor's entire operating business for little to no payment to Debtor. In a related transaction, Sims/Baker Trustee sold the Trust's interest in real property on which Debtor operated some facilities to Vista SNF Properties, LLC, a related entity to Vista, for nearly $2,000,000.00.

Burger PTS argues that Sims/Baker Trustee structured the transaction to ensure that the Baker Trust received millions of dollars without subjecting the funds to pay creditor claims. Additionally, while conducting this purported scheme, Sims/Baker Trustee continued to receive a salary from Debtor while Burger PTS was not being paid for its services. Burger PTS alleges that Sims/Baker Trustee prioritized payment of vendors who threatened to stop working if they were not

1   paid, over vendors who continued working, such as Burger PTS, despite not being paid.

2       Burger PTS asserts that after discovering this scheme, Burger PTS had no choice but to file

3   suit against Sims/Baker Trustee.

**First Cause of Action**
**Intentional Interference with Prospective Economic Advantage**

6       Burger PTS lists the following as the elements for the First Cause of Action in the First

7   Amended Complaint:

> (1) the existence, between the Burger PTS and some third party, of an economic relationship that contains the probability of future economic benefit to Burger PTS;

> (2) Sims/Baker Trustee's knowledge of the relationship;

> (3) intentionally wrongful acts designed to disrupt the relationship; and

> (4) actual disruption of the relationship; and

> (5) economic harm proximately caused by Sims/Burger Trustee's actions;

14   citing *Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.* 2 Cal.5th 505, 512 (2017) as

15   stating applicable California law.

16       Burger PTS points the court to *Shaoxing County Huayue Import & Export v. Bhaumik,* 191

17   Cal.App.4th 1189 (Cal. Ct. App. 2011) where the District Court of Appeal noted that there is a

18   difference between the claims trustee may be bringing on behalf of the estate and the claims of a

19   creditor against a third party. In particular, the court held that:

> "Although the line between 'claims of the debtor,' which a trustee has statutory authority to assert, and 'claims of creditors,' which Caplin bars the trustee from pursuing, is not always clear, the focus of the inquiry is on whether the Trustee is seeking to redress injuries to the debtor itself caused by the defendants' alleged conduct. [Citation.] If the debtor suffered an injury, the trustee has standing to pursue a claim seeking to rectify such injury. But, '[w]hen a third party has injured not the bankrupt corporation itself but a creditor of that corporation, the trustee in bankruptcy cannot bring suit against the third party.' [Citations.]" *Smith v. Arthur Andersen LLP* (9th Cir. 2005) 421 F.3d 989, 1002–1003.)

25   *Shaoxing County Huayue Import & Export v. Bhaumik,* 191 Cal.App.4th at 1197.

26       Burger PTS asserts there was an economic relationship between Burger PTS and Debtor on

27   the basis that there was a contract for services between Burger PTS and Debtor. Burger PTS further

28   argues that Sims/Baker Trustee knew of this contract. Sims/Baker Trustee took intentional wrongful

acts, namely causing the sale of Debtor's assets to Vista for unreasonably low consideration, which caused a "disruption." This disruption is the lack of payment from Debtor to Burger PTS. Sims/Baker Trustee also ensured that the Baker Trust was repaid before repaying the creditors of [Debtor], including Burger PTS. This lack of payment caused loss of revenue for Burger PTS and thus Burger PTS suffered economic harm.

Burger PTS argues that the instant case is analogous to *Shaoxing*. In that case, a creditor of a corporation that filed bankruptcy sought to recover from an individual shareholder of the corporation under an alter ego theory. 191 Cal.App.4th at 1193. In *Shaoxing*, the shareholder sought to escape liability by arguing that the causes of action were property of the estate and thus such creditor did not have standing. *Id*. The appellate court disagreed finding that the creditor was not "assert[ing] rights belonging to the corporation" by seeking money from the shareholder that was owed to the creditor, and adding that creditor's claims "were not property of the bankruptcy estate." *Id*. at 1199.

Burger PTS argues that the allegations above are personal to Burger PTS because it is damage done to Burger PTS, not damage done to Debtor. The injuries Burger PTS seeks redress are injuries to Burger PTS, as a creditor, the claim thus belongs to Burger PTS and cannot be pursued by a trustee.

**Second Cause of Action**
**Negligent Interference with Prospective Economic Advantage**

Burger PTS asserts that the elements for negligent interference with prospective economic advantage are the same as intentional interference, with the exception that the wrongful acts were not intentional. It is alleged that Sims/Baker Trustee knew that the economic relationship with Burger PTS would be disrupted if the Sims/Baker Trustee failed to act with reasonable care, and the Sims/Baker Trustee indeed failed to act with reasonable care.

Here, Burger PTS asserts that, as explained, there was an economic relationship and there was a prospective advantage that would become a realized advantage had it not been for the negligent actions taken by Sims/Baker Trustee. Burger PTS argues that it has established that Sims/Baker Trustee acted without reasonable care because the allegations as stated show that

Sims/Baker Trustee acted in a way that disrupted the economic relationship.

Burger PTS again argues that the allegations above are personal to Burger PTS because it is damage done to Burger PTS, not damage done to Debtor. The injuries Burger PTS seeks redress are injuries to Burger PTS, as a creditor, and thus the claim belongs to Burger PTS and cannot be pursued by a trustee.

**Third Cause of Action**
**Conspiracy to Intentionally Interfere with Prospective Economic Advantage**

Burger PTS lists the following as the elements for this cause of action: (1) formation and operation of the conspiracy, (2) damage resulting to Burger PTS, and (3) from an act in furtherance of the common design. *I-CA Enterprises, Inc. v. Palram Americas, Inc.* (2015) 235 Cal.App.4th 257, 272, fn. 2.

Burger PTS contends that the allegations stated for intentional interference with prospective economic advantage show that, at the very minimum, there was a conspiracy between Sims/Baker Trustee and Vista, and moreover that Burger PTS was damaged as a result of the wrongful acts taken by Sims/Baker Trustee.

Burger PTS again argues that the allegations above are personal to Burger PTS because it is damage done to Burger PTS, not damage done to Debtor. The injuries Burger PTS seeks redress are injuries to Burger PTS, as a creditor, and as such the claim belongs to Burger PTS and cannot be pursued by a trustee.

**Fourth Cause of Action**
**Unfair Competition Law Bus. & Prof. Code §§ 17200, et. seq.**

Burger PTS argues that the allegations as stated in the first amended Complaint show a violation of the Unfair Competition Law (UCL) in that Sims/Baker Trustee engaged in a fraudulent business practice and such fraudulent practice it was directed at Burger PTS. Burger PTS contends that by Sims/Baker Trustee continuing to order services from Burger PTS, while failing to disclose that Debtor could not pay Burger PTS for those services, Sims/Baker Trustee engaged in actions that amounted to misleading or deceiving Burger PTS.

As with the previous causes of action, Burger PTS argues that the allegations above are

personal to Burger PTS because it is damage done to Burger PTS, not damage done to Debtor. The injuries Burger PTS seeks redress are injuries to Burger PTS, as a creditor, and as such the claim belongs to Burger PTS and cannot be pursued by a trustee.

**DISCUSSION**

Burger PTS seeks to assert four causes of action against Sims/Baker Trustee which are stated in the First Amended Complaint in the State Court Action. The court separately considers each and the grounds alleged for each cause of action.

Before reviewing the factual grounds, a review of the various key authorities cited by the Parties is warranted.

In *Shaoxing County Huayue Import & Export v. Bhaumik*, 191 Cal.App. 4th 1189 (2011), the California Court of Appeal was addressing the claims of a creditor of a Chapter 7 debtor being asserted against a third party based on alter ego. The Court of Appeal provides a detailed discussion of what is property of the bankruptcy estate of a corporate debtor and the bankruptcy trustee's right and power to administer such property, including claims against others.

The Court of Appeal stated that the trustee for the bankruptcy estate for a debtor corporation can maintain alter ego claims against third-parties if there can be alleged an injury to the corporation.

> The trustee of a bankrupt corporation can maintain an action against a defendant based on an alter ego theory if there is some allegation of injury to the corporation that gives the corporation a right of action against the defendant. (*Stodd v. Goldberger* (1977) 73 Cal.App.3d 827, 833 (Stodd).) For example, the **trustee of a bankrupt corporation** can maintain an action against corporate shareholders on an **alter ego theory in order to recover property or pursue a right of action belonging to the bankrupt corporation, including an action to set aside fraudulent transfers or an action for conversion to recover assets of the bankrupt corporation**. (*Id.* at p. 834.) However, the trustee of a bankrupt corporation "**cannot maintain an action against defendants on an alter ego theory absent some allegation of injury to the corporation giving rise to a right of action** in it against defendants. In the absence of any such allegation, the asserted cause of action belongs to each creditor individually. . . ." (*Id.* at p. 833.) "[A] trustee in bankruptcy may not enforce rights of action which belong to the creditors individually[,] because they are not rights in which the bankrupt claims an interest and are not assets of the estate in bankruptcy. [Citations.]" (*Id.* at p. 835.)
> . . .
> In this case, Shaoxing alleged Bhaumik was liable as ITC's alter ego with respect to money that ITC owed for breach of contract and common counts. **Shaoxing did not seek to assert a right of action belonging to the corporation.**

9

Bhaumik has not argued that the alter ego allegations constituted a substantive right of action belonging to the corporation. We hold that Shaoxing's claims based on alter ego liability were not the property of ITC's bankruptcy estate and, therefore, the action was not subject to the automatic stay of the bankruptcy proceedings.

*Shaoxing*, 191 Cal.App. 4th at 1198-1999 [emphasis added].

On the federal side of the law, *Tronox Inc. v. Kerr-McGee Corp*, 855 F.3d 84 (2nd Cir. 2017), is presented by Burger PTS. In ruling on the issues before it, the Second Circuit Court of Appeals panel dismissed the appeal due to lack of jurisdiction. As the panel described it, there were "tortured corporate histories and shifting legal theories" that made for a messy case. Though dismissing the appeal for lack of jurisdiction, the Appellate Court discussed the law on derivative claims in the context of bankruptcy cases. A "derivative claim" is described by the court in *Tronox* as "[c]laims 'based on rights 'derivative' of, or 'derived' from, the debtor's'—typically constitute 'property of the estate.'" *Tronox Inc. v. Kerr-McGee Corp*, 855 F.3d at 99. The Appellate Court's discussion includes the following explanation of derivative claims:

> "Derivative claims" in the bankruptcy context are those that **"'arise[] from harm done to the estate' and that 'seek [] relief against third parties that pushed the debtor into bankruptcy.'"** *Madoff*, 740 F.3d at 89 (alterations in original) (quoting *Picard v. JPMorgan Chase & Co.* (*In re Bernard L. Madoff Inv. Sec. LLC*) ("*JPMorgan*"), 721 F.3d 54, 70 (2d Cir. 2013)). In distinguishing derivative claims from particularized claims exclusive to individual creditors, **labels are not conclusive, since plaintiffs often try, but are not permitted, to plead around a bankruptcy**. See *id.* at 91-92. In other words, **we are wary of putting form over substance**. *See id.* at 89, 91-92. Thus, we "inquire into the **factual origins of the injury and, more importantly, into the nature of the legal claims asserted**." *Id.* at 89 (citing *Johns-Manville Corp. v. Chubb Indem. Ins. Co.* (*In re Johns-Manville Corp.*) ("*Manville III*"), 517 F.3d 52, 67 (2d Cir. 2008), rev'd on other grounds sub nom. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 129 S. Ct. 2195, 174 L. Ed. 2d 99 (2009)). If the claim "**is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim**, and the **creditors are bound by the outcome of the trustee's action**." *St. Paul*, 884 F.2d at 701. Whereas a derivative injury "is based upon 'a secondary effect from harm done to [the debtor],' **an injury is said to be 'particularized' when it can be 'directly traced to [the third party's] conduct**.'" *Madoff*, 740 F.3d at 89 (alterations in original) (quoting *St. Paul*, 884 F.2d at 704). **Non-derivative claims are personal to the individual creditor and of no interest to the others.**

*Tronox Inc. v. Kerr-McGee Corp*, 855 F.3d at 100 (emphasis added).

At this juncture, whatever "mere" label that a plaintiff may use when pursuing a third-party is not determinative of whether it is a derivative claim. One must look to see if the alleged injury,

the harm done, is particularized to one creditor or whether it is an injury that effects all creditors of the debtor. Further, it is not just the "injury," but, as the Federal Court of Appeals says, "more importantly" is the nature of the claim being asserted by the plaintiff against the third-party.

The Second Circuit decision in *Tronox* continues, providing an amplification of this analysis in the following:

> As difficult a task as it may be to distinguish derivative from non-derivative claims, our prior decisions—namely, *St. Paul, Manville III, JPMorgan,* and *Madoff,* each employed by the District Court—and the Third Circuit's divided-panel decision in *In re Emoral, Inc.* ("*Emoral*"), 740 F.3d 875 (3d Cir. 2014), have done much of the legwork. Those cases and general principles of bankruptcy law **persuade us that the Avoca Plaintiffs' claims against New Kerr-McGee are generic, derivative claims**.
>
> ***St. Paul***. In *St. Paul*, PepsiCo sued Banner, the corporate parent of the debtor, for claims PepsiCo had against the debtor, **claiming that** Banner had **stripped away the assets of its alter ego subsidiary, the debtor**. 1884 F.2d at 692. **PepsiCo argued that its claim was particularized, emphasizing its individualized harm suffered at the hands of the debtor**. *Id.* at 703-04. **We determined** that PepsiCo's **harm stemmed from its original relationship to the debtor,** not Banner. *Id.* at 704. But that harm—the failure to honor contractual obligations—was not the harm for which PepsiCo sought redress against Banner. *See id.* Instead, PepsiCo "**alleged a secondary effect from harm** done to [the debtor]" by **Banner—removing assets from the debtor that would have allowed it to meets its obligations** to PepsiCo and other creditors. *Id.* Thus, we held the **proper remedy** for any harm caused by Banner to the debtor, and in turn all of its creditors, was **"for the trustee to bring an alter ego claim as property of the estate, . . . or to bring an action alleging preferential or fraudulent transfer of assets to Banner**." *Id.*

*Id.* (emphasis added).

The court notes that this appears to be exactly what Burger PTS asserts is the basis for its claims against Sims/Baker Trustee - the preferential payment of creditors and fraudulent transfer of assets.

> ***Manville III***. To understand *Manville III*, one must appreciate the context in which it was decided. The bankruptcy of the Johns-Manville Corporation ("Manville") produced a number of cases in this Court. In one of those cases, **a distributor of Manville's products**, **alleging that it was a coinsured under Manville's insurance policies**, challenged the bankruptcy court's authority to enter an injunction barring what the **distributor argued were independent contract-based claims against the insurer**. *MacArthur Co. v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*) ("*Manville I*"), 837 F.2d 89 (2d Cir. 1988). We rejected the distributor's characterization, holding that the **distributor's claims, whether sounding in tort or contract, were "derivative**" of Manville's because they **sought recovery "out of the proceeds of Manville's insurance policies** on the **basis  of Manville's conduct**." *Id.* at 92-93.

Manville III was a very different case from Manville I. There, **asbestos victims sued the same insurer**, but the allegations were that the **insurer had tortiously "influenced Manville's** purported **failure to disclose its knowledge of asbestos hazards**." *Manville III*, 517 F.3d at 58.[22]  Contrasting those claims with the ones in *Manville I*, we held the **claims were non-derivative because they sought to recover for harms done directly to plaintiffs by the insurer** through the insurer's own wrongdoing, **not for some wrongdoing that affected the estate**. See *id.* at 68.

We also now have the benefit of two recent cases applying the distinction drawn *in Manville III*.

**JPMorgan.**    In *JPMorgan*, we held that the liquidation trustee for the estate of Bernard L. Madoff Investment Securities LLC ("BLMIS") lacked standing to bring claims "on behalf of thousands of customers against third-party financial institutions for their handling of individual investments made on various dates in varying amounts" from BLMIS accounts. 721 F.3d at 71. As with the claims in Manville III, **we determined that the trustee's claims—because they alleged that the third-party financial institutions independently cause particularized harm to individual creditors—were owned by the customers**, and were therefore not derivative. *Id.*

**Madoff.**    Most recently, in *Madoff*, we considered whether **claims by a creditor against a non-debtor were derivative of claims asserted and settled by the BLMIS trustee** and therefore barred by the injunction that served as the model for the Injunction here. The **trustee in *Madoff*** asserted in an **adversary proceeding claims for fraudulent transfer, avoidable preferences, and turnover** against alleged Madoff co-conspirator Jeffrey Picower and other defendants, based on their alleged improper withdrawals of more than $6.7 billion from BLMIS. *Madoff*, 740 F.3d at 85. During the pendency of settlement negotiations, **BLMIS customers** (creditors of the BLMIS estate) **named the same defendants in a class action in district court alleging, among other things, civil conspiracy and conversion based on similar allegations**. *Id.* The bankruptcy proceeding thereafter settled. In confirming the settlement and **issuing an injunction against duplicative and derivative claims, the district court ruled that the class-action claims were barred**. *Id.* at 87.

On appeal, we agreed. *Id.* at 96. We were **not persuaded by the fact that the plaintiffs alleged different causes of action than had the trustee**. There, as here, the plaintiffs **did not allege that the defendants took any "particularized" action aimed at them**. *Id.* at 93. Instead, they **sought to plead around an injunction by focusing on the nature of the relief sought**. *See id.* We looked beyond the plaintiffs' labels, and determined that the **claims derived from the estate because the "alleged injuries [were] inseparable from, and predicated upon, a legal injury to the estate**." *Id.* at 92. We contrasted the claims with those in *Manville III* and *JPMorgan*, and likened them to claims alleged in *Manville I*.[23] *Id.* at 90. The **specific damages BLMIS customers** sought from Picower and his codefendants—namely, **losses and taxes—were not "recoverable in an avoidance action under the Bankruptcy Code**." *Id.* at 93 (citing 11 U.S.C. § 550(a) ("[T]he trustee may recover, for the benefit of the estate, the property transferred, or . . . the value of such property. . . .")). Nonetheless, we **held that the damages suffered by all BLMIS customers "still remain[ed] mere secondary harms flowing from the Picower defendants' fraudulent withdrawals and the resulting depletion of BLMIS funds**." *Id.*

*Id.*, 100-102.

Again, merely because the creditors seeking to sue the third-parties claimed their own specific injuries, that did not allow them to base those claims on the fraudulent transfers that only the bankruptcy trustee could recover for the bankruptcy estate.

> ***Emoral.*** *Emoral*, similar to the case here, arose in the context of a motion to enforce a court order approving the settlement of a claim for fraudulent transfer. 740 F.3d at 877. **The case involved a prepetition sale of assets by *Emoral*,** a company that manufactured diacetyl, a chemical used in food flavoring that was the subject of many toxic-tort suits. *See id.* After Emoral filed for bankruptcy, the **trustee brought an adversary proceeding against Aaroma, the buyer of Emoral's assets,** **alleging** that the prepetition sale constituted **a fraudulent transfer**. *See id.* The parties reached a settlement and, like here, the **trustee agreed to release Aaroma from any claims that were property of the Emoral estate. See id.** At the hearing on the propriety of the settlement, however, the Diacetyl plaintiffs (with the agreement of a representative of the trustee) challenged the release, **arguing that any successor-liability claims against Aaroma did not belong to the Emoral estate, and that the trustee was therefore without authority to release them**. *See id.* The plaintiffs thereafter sued Aaroma arguing for successor liability, relying on the trustee's arguments that the claims were outside the estate. *See id.* The bankruptcy court agreed, the district court reversed and remanded to the bankruptcy court, and the Third Circuit affirmed the district court's order. *See id.* at 878.

> The Third Circuit majority framed the issue (in terms that could be used nearly verbatim here) as one that **"require[d] [it] to determine whether personal injury causes of action arising from the alleged wrongful conduct of a debtor corporation, asserted against a third-party non-debtor corporation on a 'mere continuation' theory of successor liability under state law, are [\*103] properly characterized as 'generalized claims'** constituting property of the bankruptcy estate." *Id.* at 876.

> **The court answered that question in the affirmative.** *Id.* at 882. The majority relied on our explication in *St. Paul* that, in analyzing **"common claims against the debtor's alter ego or others who have misused the debtor's property in some fashion,"** if a claim is **"a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor**, **the trustee is the proper person to assert the claim**, and <u>the creditors are bound by the outcome of the trustee's action</u>." *Id.* at 879 (quoting *St. Paul*, 884 F.2d at 701). In the majority's eyes, the **plaintiffs "fail[ed] to demonstrate how any of the factual allegations that would establish their cause of action based on successor liability are unique to them as compared to other creditors** of Emoral," or "how recovery on their successor liability cause of action would not benefit all creditors of Emoral given that Aaroma, as a mere continuation of Emoral, would succeed to all of Emoral's liabilities." *Id.* at 880. Thus, the majority held that the plaintiffs' claim was "general" rather than "individualized," and therefore part of the bankruptcy estate. *Id.* The court emphasized that the "[p]laintiffs' cause of action against Aaroma **would be based on facts generally available to any creditor, and recovery would serve to increase the pool of assets available to all creditors**." *Id.* at 881.

*Id.*, 102-103 (emphasis added).

This court is also directed to the Bankruptcy Appellate Panel for the Ninth Circuit decision in *Hoskins v. Citigroup, Inc.* (*In re Viola*), 469 B.R. 1 (B.A.P. 9th Cir. 2012); affrm. *Hoskins v.*

*Citigroup, Inc.* (*In re Viola*), 583 Fed. Appx. 669 (9th Cir., 2014).  In *Viola*, the creditors sought to assert third-party claims against Citigroup relating to a Ponzi scheme conducted through a Citibank bank account and related entities.  In addressing Ninth Circuit law concerning claims of a bankruptcy estate and claims of individual creditors against a third-party, the Bankruptcy Appellate Panel explained:

> In the Ninth Circuit, "it is well settled that a **bankruptcy trustee** has no standing generally to sue third parties on behalf of the estate's creditors, but **may only assert claims held by the [debtor] itself.**" *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002 (9th Cir. 2005) (internal citations omitted); see also *In re Hamilton Taft & Co.*, 176 B.R. at 902 (**"A debtor's bankruptcy trustee . . . is not authorized to pursue every action that creditors of the debtor might pursue."**). Hoskins' claim against the Citi defendants for aiding and abetting fraudulent transfers is entirely derived from the creditor investors, and would not exist but for their existence and involvement in the bankruptcy. For the reasons laid out in *Caplin* and adopted by the Ninth Circuit in *Williams,* we must conclude that Hoskins does not have standing to pursue this claim, and therefore we affirm the dismissal of Hoskins' third claim for relief.

*Hoskins v. Citigroup, Inc.* (*In re Viola*), 469 B.R. 1, 8-9 (B.A.P. 9th Cir. 2012).  The trustee in *Hoskins* asserted causes of action sounding as fraudulent conveyances pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 544(b), and a third for damages for Citigroup Inc. aiding and abetting Viola's fraudulent transfers.  However, the Panel determined that the bankruptcy trustee did not have such claims against Citigroup, Inc.  First, concluding that Citigroup, Inc. was not a transferee of a transfer, and second, that any such claim, if it existed, was time barred.

Distilled down, the bankruptcy trustee has standing to prosecute claims of the estate - those being the ones the debtor had and those given by Congress in the Bankruptcy Code, which in the matter before the court are fraudulent conveyances, preferences, or avoidable as provided in 11 U.S.C. §  544 (which includes claims held by creditors to avoid transfers), § 547, § 548, and § 550.

**Allegations In the First Amended Complaint**
**by Which Burger PTS Bases Its Claims**
**Against Sims/Baker Trustee**

First, for general allegations common to all causes of action, the First Amended Complaint begins with an assertion that Sims/Baker Trustee had a scheme to "strip [Debtor] of its assets to avoid paying [Debtor's] creditors . . . and to increase the monies paid to and collected by Defendant

14

[Sims/Baker Trustee]." First Amended Complaint, ¶ 1.

The First Amended Complaint further alleges that this was done while Sims/Baker Trustee was serving as not only the Trustee of the Baker Trust and the 100% owner of the Debtor, but also while serving as President, Secretary, and the sole Director of Debtor. *Id.* Further, that Sims/Baker Trustee used his position as President, Secretary, and the sole Director to maximize his own profits and interfere with Burger PTS's (as a creditor of Debtor) ability to collect the obligations owed by Debtor. *Id.*

The general allegations in the First Amended Complaint include the following:

1. The Baker Trust held a 50% interest in a partnership that owned 100% of the land and facilities on which Debtor operated two facilities (the "Real Property"). *Id.* ¶ 10.

2. In 2012 Sims/Baker Trustee became the President, Secretary, and sole Director of Debtor. Then, either individually or in his capacity as the Trustee of the Baker Trust, Sims/Baker Trustee retained ownership of the 50% interest in the Real Property, instead of "holding" the Real Property "in the name of" Debtor. *Id.* ¶ 11.

At this juncture, it could be read that the Debtor had a right to claim ownership to the property, and if so, this arose pre-petition, and any such right to the property is that of the bankruptcy estate in this case, which was created in July 2016.

3. In 2013 Debtor entered into a contract with Burger PTS to provide services. *Id.* ¶ 13.

4. Debtor did not make a profit in operating its businesses during the period that Sims/Baker Trustee was the President, Secretary, and sole Director. *Id.* ¶ 14.

5. Debtor failed to pay Burger PTS for the services provided.

6. In September 2015 Burger PTS sent Debtor the following statements for amounts due and owing Burger PTS under its contract with Debtor:

a. $66,627.77 for services provided to the Bel-Air Convalescent Hospital;

b. $194,389.83 for services provided to the Elness Convalescent Hospital; and

c. $78,067.17 for services provided to the Hale Aloha Convalescent Hospital.

These amounts totaled $339,084.77 as of September 2015. *Id.* ¶¶ 16-19.

///

7.     Sims/Baker Trustee controlled Debtor and decided to sell Debtor. *Id.* ¶ 21.

8.     Sims/Baker Trustee developed a scheme to ensure that he and his family members would receive payments for alleged obligations, rather than the proceeds be used to pay all creditors, including Burger PTS. *Id.* ¶ 22.

a.     Vista SNF Properties and Vista Del Sol Postacure Care (collectively "Vista") obtained Debtor's entire business operation

(1)     patients,
(2)     employees,
(3)     personal property,
(4)     administration,
(5)     technology,
(6)     billing histories (records)
(7)     vendor relationships, and
(8)     contracts,

With no cash payments made to Debtor for any of these assets and the business operations of the Debtor acquired by Vista. *Id.*

b.     Vista did assume limited and specific debts of Debtor as part of the agreement. *Id.* ¶ 23.

9.     At the same time as the sale of the Debtor's business and assets, Sims/Baker Trustee, as the Trustee of the Baker Trust, sold its interest in the Real Property on which Debtor operated some of its facilities to Vista. *Id.* ¶ 24. The transaction was structured to pay "millions of dollars" to the Baker Trust and divert the monies from claims of creditors of Debtor. *Id.*

This assertion sounds in the nature of a preference, if the Baker Trust was a *bona fide* creditor of the Debtor, or fraudulent conveyances, if the Baker Trust was not a *bona fide* creditor of Debtor. Preference and fraudulent conveyance claims are property of the bankruptcy estate. 11 U.S.C. §§ 547, 544, 548, 541(a)(3), 550.

10.     It is alleged that Sims/Baker Trustee, individually, as President of Debtor, as the sole Director of Debtor, and as the Trustee of the Baker Trust:

a.     Conspired with others, including Vista,

b.     And devised schemes as described in the First Amended Complaint,

c.     To hinder, delay or defraud all of Debtor's creditors, including Burger PTS.

*Id.* ¶ 25.

These words, "to hinder, delay, or defraud" creditors, echo the statutory language for fraudulent conveyances under the Bankruptcy Code, 11 U.S.C. § 548(a)(1)(A), and California's version of the Uniform Fraudulent Conveyances Act, California Civil Code § 3439.04(a)(1). As

16

1   stated above, these claims are property of the bankruptcy estate.  11 U.S.C. §§ 541(a)(3), 550.

2        11.    Sims/Baker Trustee executed the scheme and Debtor's creditors were left
                unpaid.  However, the Baker Trust received payment in full for all of the
3                obligations it asserted it was owed.  *Id.* ¶ 26.

4   This alleged wrong sounds in the nature of preference under 11 U.S.C. § 547, which is

5   property of the bankruptcy estate.

6
        12.    Sims/Baker Trustee "prioritized" creditors of Debtor who threatened to stop
7                providing services if they were not paid, by paying such preferred creditors,
                and not paying creditors who did not threaten to stop providing services if
8                they did not receive a preferential payment.  *Id.* ¶ 27.

9   While stating some creditors were "prioritized," it is alleged that the payments were made

10  to the preferred creditors in order to have those creditors provide additional goods or services

11  (consideration).  Congress addresses this type of preference in 11 U.S.C. § 547(c)(1).

12       13.    Sims/Baker Trustee used his position as Trustee, President, and sole Director
                to make preferential payments interfered with Burger PTS's ability to get,
13                and defrauded Burger PTS from getting, paid the obligations it was owed by
                Debtor.  *Id.* ¶ 28.

14  **First Cause of Action -**
15  **Wrongful Interference with Prospective Economic Advantage**

16      The first cause of action in the First Amended Complaint is for Intentional Interference with

17  Prospective Economic Advantage.  Going to the WITKIN Treatise on California Law, it first explains

18  that the wrongful conduct for this tort is:

19      The wrong consists of intentional and improper methods of diverting or taking
        business from another that are not within the privilege of fair competition. [multiple
20        citations omitted].
        . . .
21      It has been suggested that the tort of inducing breach of contact "is merely a species
        of the broader tort of interference with prospective economic advantage." (*Buckaloo
22        v. Johnson* (1975) 14 C.3d 815, 823, 122 C.R. 745, 537 P.2d 865, infra, § 862.)
        However, **interference with prospective economic advantage**, unlike inducing
23        breach of contract, **requires wrongful conduct other than the act of interference
        itself**. (*Della Penna v. Toyota Motor Sales, U.S.A.*, supra, 11 C.4th 393.)

24

25  5 WITKIN SUMMARY OF CALIFORNIA LAW, 11ᵀᴴ TORTS § 854 (emphasis added).  The elements of this

26  tort were repeated and reaffirmed by the California Supreme Court in *Korea Supply Co. v. Lockheed*

27  *Martin Corporation*, 29 Cal. 4th 1134, 1153(2003), (emphasis added) as:

28      These elements are usually stated as follows: " '(1) an economic relationship between

the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.' [Citations.]" (*Westside Center Associates v. Safeway Stores 23, Inc.* (1996) 42 Cal.App.4th 507, 521-522.)

We most recently considered this tort in *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376 (*Della Penna*), where we held that a **plaintiff** seeking to recover damages for interference with prospective economic advantage **must plead and prove** as part of its case-in-chief that the **defendant's conduct was "wrongful by some legal measure other than the fact of interference itself."** (*Id.* at p. 393.)
. . .
. . .
While a plaintiff may satisfy the intent requirement by pleading specific intent, i.e., that the defendant desired to interfere with the plaintiff's prospective economic advantage, a plaintiff may alternately plead that the defendant knew that the interference was certain or substantially certain to occur as a result of its action.
. . .
The elements of the tort of interference with prospective economic advantage do not require a plaintiff to allege that the defendant acted with the specific intent, or purpose, of disrupting the plaintiff's prospective economic advantage.

At the core of the alleged "wrongful conduct" is that Sims/Baker Trustee was acting to prefer paying one group of creditors over others, excluding Burger PTS. The only "wrongful" act is asserted to be the "preference" of paying others - with such "wrongful preference" being a uniquely federal, bankruptcy law, property of the bankruptcy estate right. 11 U.S.C. § 547.

The First Cause of Action further asserts that the Debtor's assets were sold for unreasonably low consideration, and with an intent to hinder, delay, or defraud creditors. The recovery for this wrong is clearly within the rights of the bankruptcy estate to recover fraudulent conveyances. 11 U.S.C. § 544 and § 548.

While titled an interference with economic advantage, the "interference" is just the alleged preferences or fraudulent conveyances.

Such rights relating to these "wrongful acts" upon which the alleged wrongful interference with prospective economic advantage is based on, and the right to recover the damages relating to such wrongful acts, were property of the bankruptcy estate, administered by the Chapter 7 Trustee, and sold to Sims/Baker Trustee as part of the court approved compromise. Merely titling the alleged preferences or fraudulent conveyances as an intentional interference with prospective economic advantage does not allow Burger PTS to try to prosecute personal claims based on those rights of

18

the bankruptcy estate.

**Second Cause of Action -**
**Negligent Interference with Prospective Economic Advantage**

Burger PTS asserts that the elements for negligent interference with prospective economic advantage are the same as intentional interference, with the exception that the wrongful acts were not intentional. Further, that the Sims/Baker Trustee knew that the economic relationship would be disrupted if the Sims/Baker Trustee failed to act with reasonable care, and the Sims/Baker Trustee indeed failed to act with reasonable care.

Here, Burger PTS asserts that there was an economic relationship and there was a prospective advantage that would become a realized advantage had it not been for the negligent actions taken by Sims/Baker Trustee. Burger PTS argues that it has established that Sims/Baker Trustee acted without reasonable care because the allegations as stated show that Sims/Baker Trustee acted in a way that disrupted the economic relationship.

The "wrongful conduct" upon which the improper interference is asserted are the alleged preferences and fraudulent conveyances, as there were for the Intentional Interference Tort.

As with the Intentional Interference Tort, Burger PTS cannot take, diminish, or co-opt the bankruptcy estate's and the Chapter 7 Trustee's rights and interests arising under 11 U.S.C. §§ 547, 544, 548, 541(a)(3), 550.

**Third Cause of Action -**
**Conspiracy to Intentionally Interfere with Prospective Economic Advantage**

Burger PTS lists the following as the elements for this cause of action: (1) formation and operation of the conspiracy, (2) damage resulting to plaintiff, and (3) from an act in furtherance of the common design. *I-CA Enterprises, Inc. v. Palram Americas, Inc.* (2015) 235 Cal.App.4th 257, 272, fn. 2.

Burger PTS contends that the allegations stated for intentional interference with prospective economic advantage show that, at the very minimum, there was a conspiracy between Sims/Baker Trustee and Vista, and moreover that Burger PTS was damaged as a result of the wrongful acts taken by Sims/Baker Trustee.

The "wrongful conduct" upon which the conspiracy to make the improper interference is asserted are the alleged preferences and fraudulent conveyances as for the Intentional Interference Tort.

As with the Intentional Interference Tort, Burger PTS cannot take, diminish, or co-opt the bankruptcy estate's and the Chapter 7 Trustee's rights and interests arising under 11 U.S.C. §§ 547, 544, 548, 541(a)(3), 550.

**Fourth Cause of Action -**
**Unfair Competition Law Bus. & Prof. Code §§ 17200, et. seq.**

Burger PTS argues that the allegations as stated in the first amended Complaint show a violation of the Unfair Competition Law (UCL) in that Sims/Baker Trustee engaged in a fraudulent business practice and it was directed at Burger PTS. Burger PTS contends that by Sims/Baker Trustee continuing to order services from, while failing to disclose that Debtor could not pay Burger PTS for those services, Sims/Baker Trustee engaged in actions that amounted to misleading or deceiving Burger PTS.

As with the previous causes of action, Burger PTS argues that the allegations above are personal to Burger PTS because it is damage done to Burger PTS, not damage done to Debtor. The injuries Burger PTS seeks redress are injuries to Burger PTS, as a creditor, and as such the claim belongs to Burger PTS and cannot be pursued by a trustee.

Again, the "wrongful conduct" upon which the Unfair Competition is asserted are the alleged preferences and fraudulent conveyances as for the Intentional Interference Tort.

As with the Intentional Interference Tort, Burger PTS cannot take, diminish, or co-opt the bankruptcy estate's and the Chapter 7 Trustee's rights and interests arising under 11 U.S.C. §§ 547, 544, 548, 541(a)(3), 550.

**CONCLUSION**

While titling the four Causes of Action in the First Amended Complaint as Intentional, Negligent, and Conspiracy to Intentionally Interfere With Prospective Economic Advantage, and Unfair Competition (Cal. Bus. & Prof. §§ 17200 et seq.), the alleged wrongful conduct asserted are preferences and fraudulent conveyances that are, as a matter of federal law, property of the

bankruptcy estate and rights given to the Chapter 7 Trustee.  There are no, as the First Amended Complaint has been presented to the court, alleged wrongful conduct that was done uniquely as to the Burger PTS.

In making this determination, the court does not rule that the causes of action for Intentional, Negligent, and Conspiracy to Commit Interference With Prospective Economic Advantage and the Unfair Competition "causes of action" were property of the estate or rights of the Chapter 7 Trustee. The court does determine that claims based on alleged preferences or fraudulent conveyances were property of the bankruptcy estate settled by the Chapter 7 Trustee, and sold to Sims/Baker Trustee.

If Burger PTS could assert wrongs that are personal, not wrongs for which the bankruptcy estate and Chapter 7 Trustee have the rights and claims, the court does not prospectively determine such unstated claims.

The court shall enter an order stating that all claims based on alleged preferential payments to other creditors or alleged fraudulent transfers of assets of the Debtor were property of the bankruptcy estate and that pursuant to the Compromise with the Chapter 7 Trustee, all such rights and claims have been assigned to John Sims, individually, and John Sims, Trustee of the G&M Baker 1994 Trust.

**Dated:**  August 25, 2020                    **By the Court**

Ronald H. Sargis, Judge
United States Bankruptcy Court

1
2

# Instructions to Clerk of Court
## Service List - Not Part of Order/Judgment

3
4

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

5
6

| **Debtor**(s) | **Attorney for the Debtor**(s) (if any) |
|---|---|

7
8
9

| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
|---|---|

10

| **Attorney for the Trustee** (if any) | Jamie P. Dreher, Esq.<br>621 Capitol Mall, 18th Floor<br>Sacramento, CA 95814 |
|---|---|

11
12
13

| Walter J. Schmidt, Esq.<br>1501 F Street<br>P.O. Box 3307<br>Modesto, CA 95353-3307 | Amanda L. Marutzky, Esq.<br>2040 Main Street, Ste. 300<br>Irvine, CA 92614 |
|---|---|

14
15

| Sara Donnersbach, Esq.<br>323 W. Lakeside Avenue, #200<br>Cleveland, OH 44113-1009 | |
|---|---|

16
17
18
19
20
21
22
23
24
25
26
27
28